## AFFIDAVIT

I, Scott Murray, having been duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent Bomb Technician and Certified Explosives Specialist with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed for over 20 years. Prior to working for the ATF, I was a police officer for the Phoenix, Arizona Police Department where I was employed for nearly five years. In my capacity as a special agent, I am familiar with the federal laws relating to explosives, bombs, firearms and controlled substance violations, have been trained in the investigation of violations of said laws, and have participated in such investigations.

2. This affidavit is based upon my training, experience, and investigation, as well as information that has been conveyed to me by other law enforcement officers. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below, including other law enforcement officers involved in this investigation. Since this complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.

3. As detailed further below, probable cause exists to believe that on April 13, 2022, William Hillard (1) knowingly possessed a firearm after previously being convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and (2) knowingly possessed a destructive device, in violation of 26 U.S.C. §§ 5841, 5845(a)(8), 5845(f), 5845(i), 5861(d), 5871.

1

PROBABLE CAUSE

4. On April 4, 2022, I was contacted by Detective Scott Moody of the Hartford, Vermont Police Department and State Police Bomb Squad Sergeant Matthew Sweitzer. Moody advised they had recovered an apparent homemade "M-class" pyrotechnic explosive device from a source of information ("SOI")[1], who stated he had received the device from William Hillard. The SOI further stated that Hillard may have possession of additional larger destructive devices with shrapnel, such as BBs, inside. The SOI stated he witnessed Hillard make other larger destructive devices constructed out of cardboard with apparent binary explosive powders and shrapnel inside such as ball bearings, BB's or screws inside that weaponize the explosive devices. Det. Moody indicated he would seek a search warrant for the residence of Hillard, located at 110 Perkins Place in White River Junction, Vermont, which is the legal address of the property. The property is physically located in the town of Wilder, Vermont.

5. I have learned that the SOI provided Detective Moody with the following additional information:

    a. William Hillard was making bombs at his residence in Wilder, Vermont. Hillard lives with his mother and Hillard "is crazy." The SOI used methamphetamine with Hillard two weeks ago. Hillard is a racist and has made comments about

---

[1] The SOI has Vermont misdemeanor convictions from 2013 for disorderly conduct and interference with access to emergency services. The SOI also has a California misdemeanor conviction from 1990 for use/under the influence of a controlled substance and a Florida misdemeanor conviction from 1976 for disorderly conduct. The SOI indicated that his/her reasons for providing information to law enforcement were (1) his/her concerns with Hillard's violent statements and use of explosives, and (2) s/he was assaulted by an associate of Hillard, causing him/her further concern.

killing black people and Democrats. Hillard wants to start a revolution in our country as he is unhappy with the current government. Within the past two weeks Hillard has also told the SOI that he wants to "kill all of his neighbors."

b. The SOI obtained "four bombs" from Hillard two weeks ago. S/he and Hillard set off three of the four explosive devices. The SOI had one device left, described as a homemade, 2-3 inches long, ½ inch in diameter with a fuse (wick) inserted into it. This device was like a "quarter stick of dynamite." The SOI had obtained explosive devices of various sizes from Hillard numerous times in the past couple of years. Hillard will typically use a thick carboard cylinder to make his "bombs."

c. When Hillard was in college he was making a device, which exploded, causing him to lose some fingers. Hillard told the SOI he was using a metal cylinder and a spark set the device off while he was making it when he had the accident. Hillard will only use cardboard cylinders now. Hillard mixes a white powder and a black powder together. Hillard will oftentimes use ball bearings or "ice cream cone shaped screws" in his devices. Hillard will place these items in the device to create more shrapnel and do more damage. Hillard will typically use a "wick" (fuse) to set off his devices, but will also often use remote detonators (remote initiator for the device). The detonators are wires attached to a large battery.[2]

d. Hillard is getting "white" (oxidizer) and "grey/black" (fuel) powders – which the SOI has seen Hillard with – and is mixing them together to create explosives for

---

[2] I know from my training and experience that individuals will at times utilize Christmas tree lights, electric igniters, or other electrically initiated igniters to ignite explosive powders remotely.

3

his devices. Hillard had these powders separated in a large (gallon size) clear plastic bag. Hillard told the SOI that he purchases these powders online.[3] Hillard uses "wicks" (fuse) for his devices and the ends of them with some type of "wax like" material. Hillard is always making devices at his house and he carries materials with him in his vehicle at times.

e. The SOI had been around Hillard several times when he has detonated his devices. Hillard is constantly talking about blast patterns, how far away he needs to be, and how many people he could "kill" based upon the blast pattern. One time, Hillard had several devices wired to trees so he could evaluate the blast pattern and damage done.

f. Hillard is constantly making threats to kill all his neighbors, the Democrats, and people of various minority groups. The SOI is afraid of Hillard and Hillard's threats have been increasing as of late. Hillard is a "radical" and wants to start a "revolution." Hillard is currently using both methamphetamine and heroin and is extremely paranoid.

6. Photographs from the ATF Law Enforcement Handbook depicting different types of material used to make explosive devices were shown to the SOI. The SOI correctly identified the material in one photograph as "ammonium nitrate." The SOI stated that Hillard has said he uses "ammonium nitrate." I know from my training and experience that ammonium nitrate is an oxidizer that can be mixed with fuels to create explosive materials.

---

[3] I know from my training and experience that individuals often order oxidizers such as potassium perchlorate and fuel powders such as aluminum powder to later combine in order to create explosive materials.

4

7. The SOI voluntarily turned over the explosive device he had obtained from Hillard. On April 5, 2022, I met with Sergeant Sweitzer and Captain David Petersen of the State Police Bomb Squad in response to their request to assist them in the disassembly and testing of the device recovered from the SOI. Sergeant Sweitzer and I utilized an ATF remote cutting tool to cut the explosive device and disassemble it for safety. Inside the device was a gray colored powder mixture that was hardened together inside the device apparently from excessive moisture that penetrated inside. We conducted an energetic field test (flame) of the powder finding it was an energetic explosive material consistent with a fuel and oxidizer mixed together as a binary powder. The device was just over 2" long and just less than 1" in diameter. I utilized a chemical analyzer which detected the presence of potassium perchlorate, a common binary oxidizer mixed with fuels such as aluminum powder to make explosives. I took custody of the disassembled explosive device to send to the ATF laboratory for further analysis.

8. On April 7, 2022, Detective Moody obtained a state-issued warrant to search the residence of Hillard, located at 110 Perkins Place in White River Junction, Vermont, for potential explosive devices, explosive materials or documents relating to explosives.

9. On April 13, 2022, I, along with members of the Vermont State Police Bomb Squad, Hartford Police, and additional agents from ATF and the Federal Bureau of Investigation, participated in the search of Hillard's residence, interviews of individuals, the seizure of evidence and scene security.

10. I spoke to Hillard's elderly mother at the residence, who stated the following:
   a. Hillard has a felony conviction in New Hampshire from an incident years prior where he was making "bombs" out of metal containers. One of the devices went

off in Hillard's hand and he lost fingers from the explosion. As a result of the felony conviction Hillard could not own any firearms.

b. Hillard had his own bedroom in the house and often worked in a workshop area he had in the basement. She typically did not go in Hillard's bedroom or the basement area he did carpentry projects in. She was not aware of Hillard making explosives devices or having firearms. Hillard had a special interest in the military and Nazi history, and Hillard owned numerous items with Nazi-type symbols.

c. Hillard had confrontations with neighbors over political beliefs during which Hillard confronted neighbors who Hillard believed to be Democrats, and Hillard spoke badly about them. She was upset that Hillard has confronted neighbors or made many of these statements to them.

11. Hillard was interviewed by Detective Moody, ATF Special Agent Brian Wood and FBI Special Agent Zach Kutz. Hillard waived his Miranda rights and agreed to speak to investigators. Among other things, Hillard stated the following:

a. He had an AR-15 type rifle, explosive materials and explosive devices inside his residence.

b. He has two prior felony convictions in New Hampshire and cannot possess firearms.

c. He had made the explosive devices to protect himself and his residence from Antifa or what Hillard described as other Democrat-affiliated extremist groups

6

because Hillard believed there would be societal unrest. He denied he had plans to attack anyone.

d. He set off approximately 50 explosive devices in recent years, some of which had shrapnel such as ball bearings, BBs or screws inserted into the devices.

e. He was ordering the explosive materials online which he would mix and utilize in the devices.

f. He had not yet fired the AR-15-type rifle he owned.

12. Inside the residence I recovered an AR-15-type rifle, identified as a Palmetto State Armory, model PA-15, 7.62x39mm (multi) caliber, serial # SCD514820 rifle. Among other things, the rifle had two stickers on it reading "WHITE POWER" on the side of the receiver. The rifle was in a gun case in a spare bedroom just across from his on the floor, appearing out of place. It appeared that when initially contacted by police at the door, Hillard had removed the firearm from his room and placed it on the floor in the nearby doorway in what I believe was an attempt to hide his possession of it. I also recovered two loaded ammunition magazines in the pockets of the case where the rifle was found and a night vision device in another pocket. Hillard additionally had multiple large capacity rifle ammunition magazines filled with ammunition. Investigators additionally found hundreds of rounds of ammunition in various calibers in Hillard's bedroom. Below is a photograph of the above-described rifle:



13.     I, along with members of the Vermont State Police Bomb Squad and FBI Special Agent Bomb Technician David Acquavella, comprised a team of specialized investigators who recovered explosive materials and improvised devices from inside the residence for safety. Investigators recovered several assembled devices consistent with destructive devices. Investigators also located many partially constructed devices, including metal pipes with holes drilled in the endcaps for a fuse, large cardboard tubes with metal ball bearings glued to the inside, large cardboard tubes with pyrotechnic fuses inserted and glued. The cardboard device containers varied in size from a smaller devices to large devices several inches in length and more than four inches in diameter, which were not completed. Investigators found apparent binary explosive powders in purchased bags labeled "ALUMINUM DARK PYRO" and "POTASSIUM PERCHLORATE" along with an unmarked bag of apparent mixed explosive materials. The marked bags indicated they were purchased online from pyrochemsource.com and from fireworkscookbook.com. I utilized a chemical analyzer on scene which detected the

presence of potassium perchlorate in a recovered unmarked bag of dark powder indicating it was a mixed explosive with apparent aluminum powder.

14. Inside his bedroom, Hillard had what appear to be numerous Nazi and white supremacy-related emblems and stickers on jackets, on ammunition magazines, a knife, on his gun case. Hillard also had what appeared to be a bullet-proof vest and other police or military items in the room.

15. One of the assembled devices removed from the residence was approximately 6 inches long and approximately 2.5 inches in diameter, comprised of PVC pipe, with a green colored pyrotechnic fuse inserted into the end of the pipe. This device was cut open on scene for safety utilizing a remote cutting tool utilized by bomb technicians and was found to have energetic explosive material inside in a powder form. Two other similar PVC pipes were also recovered, however they had a slightly larger diameter and were unable to be disassembled on scene. An X-ray of the two PVC Pipe devices showed they had apparent explosive materials and spherical metal balls inside added for apparent shrapnel. Another assembled device was constructed from thick cardboard, marked "hand grenade," was approximately 4.5 inches long and 2 inches in diameter, and had a green pyrotechnic fuse inserted in the center of the device. A remote cutting tool was used on scene to disassemble the device, which was found to have metal ball bearings glued to the inside of the device and energetic explosive material inside in a powder form. Bomb technicians conducted an energetic field test (flame) of the two devices remotely disassembled, finding the powder inside was energetic.

16. The remaining recovered devices could not be safely disassembled on scene and had to be transported to a police explosives magazine for safer storage until further render safe

9

procedures could take place in daylight hours. ATF and Bomb Squad personnel have made arrangements to utilize bomb technician tools to render these devices safe and recover evidence from the devices for further analysis at the ATF laboratory.

17. I know from my training and experience that the ATF has previously determined that devices – like those recovered from Hillard's residence – consisting of a container, initiator, explosive powder and additional shrapnel is properly identified as an "explosive bomb" and is a "destructive device" as that term is defined in Title 26, United States Code, Section 5845(f). I also know that a "destructive device" is a firearm subject to the National Firearms Act ("NFA"), which must be registered in the National Firearms Registration and Transfer Record if approved after legal review. I contacted the ATF NFA Branch that maintains these records, which provided a record indicating that Hillard does not have any legally registered NFA firearms, including any destructive devices.

18. Based on my training and experience I determined the Palmetto State Armory rifle was not manufactured in the State of Vermont and therefore traveled in or affected interstate commerce before Hillard possessed it.

19. I contacted the Court Clerk for the Merrimack Superior Court, who indicated that Hillard has two felony convictions. I was provided with records related to those convictions, showing the following:

    a. Hillard received a felony conviction on November 5, 1997, in Merrimack Superior Court of New Hampshire for Possession of Bomb or Explosives in Docket 217-1996-CR-00762.


    b. Hillard received a felony conviction on November 5, 1997, in Merrimack Superior Court of New Hampshire for Possession of a Controlled Drug in Docket 217-1996-CR-00760.

Dated at Burlington, in the District of Vermont, this 14th day of April, 2022.

_____
Special Agent Scott Murray
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this 14th day of April, 2022.

_____
Kevin J. Doyle
United States Magistrate Judge